**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| 1548199 Alberta Ltd. and Robert J. Bertram,<br><br>Plaintiff,<br><br>v.<br><br>Reliz Technology Group Holdings Inc., Reliz Ltd., Reliz CI Ltd., Joseph Patrick Perry, Nicholas Hammer, and Gordon Wallace,<br><br>Defendants. | Case No. 26-CV-02451 |

## COMPLAINT

Plaintiffs, 1548199 Alberta Ltd. and Robert J. Bertram (collectively, "Plaintiffs"), by and through their attorneys, the Patterson Law Firm, LLC, for their Complaint against Defendants, Reliz Technology Group Holdings Inc., Reliz Technologies LLC, Reliz Ltd., Reliz CI Ltd., Joseph Patrick Perry, Nicholas Hammer, and Gordon Wallace (collectively, "Defendants"),[1] state as follows:

## NATURE OF THE ACTION

This action arises from BlockFills' ongoing misappropriation of customer assets and its fraudulent concealment of that misappropriation. In January 2026, Plaintiffs delivered 40.001 Bitcoin and 650,050.00 USD

---

[1] Defendants Reliz Technology Group Holdings Inc., Reliz Technologies LLC, and Reliz Ltd. will hereinafter be referred to as "BlockFills." Defendant Reliz Ltd. does business as "BlockFills," and all of the defendant companies use the word as a trade name.

Coin to BlockFills for *custody and collateral purposes only*. By depositing these assets into their BlockFills account, Plaintiffs did not transfer ownership of the assets to Defendants. However, BlockFills continues to unlawfully retain custody of and control over Plaintiffs' specific, identifiable digital assets. Through this action, Plaintiffs seek the immediate release and return of their digital assets and additional relief. In a separate motion, Plaintiffs are seeking emergency injunctive relief to prevent BlockFills from further depleting or transferring its property.

## PARTIES

1. Plaintiff 1548199 Alberta Ltd. ("1548199") is an Alberta Business Corporation with its registered office in Ardrossan, Alberta, Canada. *See* Registry ID No. 2015481993. The company's principal place of business is located at 21149 Township Road 524 in Strathcona County, Alberta T8G2E9. 1548199 is not a citizen of Illinois, Delaware, or the Cayman Islands.

2. Plaintiff Robert J. Bertram ("Mr. Bertram") is an individual and a resident of Canada. He is a director, officer, and authorized representative of 1548199. Mr. Bertram is not a citizen of Illinois, Delaware, or the Cayman Islands.

3. Defendant Reliz Technology Group Holdings Inc. is a domestic corporation formed under the laws of Delaware on June 27, 2019. *See* File No. 7489689. Its headquarters and principal place of business is located in Illinois (at 401 W. Ontario Street, Suite 400 in Chicago, Illinois

60654). Upon information and belief, Defendant Reliz Technology Group Holdings Inc. is not a citizen of Canada. Defendant Reliz Technology Group Holdings Inc. is a holding company with numerous subsidiaries, including Defendant Reliz Ltd. and Defendant Reliz Technologies LLC.

4. Defendant Reliz Technologies LLC is a domestic limited liability company formed under the laws of Illinois on January 3, 2019. *See* File No. 07463553. Its headquarters and principal place of business is located in Illinois (at 401 W. Ontario Street, Suite 400 in Chicago, Illinois 60654). Upon information and belief, neither Defendant Reliz Technologies LLC nor any of its members are citizens of Canada.

5. Defendant Reliz Ltd. is an exempted limited company incorporated under the laws of the Cayman Islands on April 12, 2019. *See* Filing No. 334235. The company's headquarters and principal place of business is located in Illinois (at 401 W. Ontario Street, Suite 400 in Chicago, Illinois 60654). Upon information and belief, Defendant Reliz Ltd. is not a citizen of Canada. Defendant Reliz Ltd. executes principal trading transactions, manages a lending book for clients, and receives revenue from owned cryptocurrency mining machines.

6. Defendant Reliz CI Ltd. is an exempted limited company incorporated under the laws of the Cayman Islands on November 22, 2024. *See* Filing No. 415970. Defendant Reliz CI Ltd. is the sole director of Defendant Reliz Ltd. Upon information and belief, Defendant Reliz CI Ltd. is not a citizen of Canada.

7. Defendant Joseph Patrick Perry ("Mr. Perry") is an individual and a resident of Illinois. Upon information and relief, he is not a citizen or resident of Canada. Mr. Perry is the sole director of Defendant Reliz CI Ltd. He is also the Interim Chief Executive Officer of Defendant Reliz Ltd.

8. Defendant Nicholas Hammer ("Mr. Hammer") is an individual and a resident of Chicago, Illinois. Upon information and relief, he is not a citizen or resident of Canada. Mr. Hammer is a manager of Defendant Reliz Technologies LLC. He was also the Co-Founder and former Chief Executive Officer of Defendant Reliz Ltd.

9. Defendant Gordon Wallace ("Mr. Wallace") is an individual and a resident Winnetka, Illinois. Upon information and relief, he is not a citizen or resident of Canada. Mr. Wallace is a manager of Defendant Reliz Technologies LLC. He is also the President and Co-Founder of Defendant Reliz Ltd.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and the parties are citizens of different States and a foreign state.

11. Further, this Court has personal jurisdiction over all Defendants pursuant to 735 ILCS 5/2-209 because, *inter alia*, Defendants transacted business within Illinois, solicited deposits from and communicated with customers (including Plaintiffs) through Illinois-

based representatives, committed tortious acts within Illinois by making fraudulent misrepresentations and/or omissions through Illinois-based representatives and operations, and performed the acts and/or described herein in Illinois. Illinois is the principal place of business for at least three of the corporate defendants (Reliz Technology Group Holdings Inc., Reliz Technologies LLC, and Reliz Ltd.), who are also headquartered in Chicago, Illinois. Moreover, Defendant Reliz Technologies LLC is a limited liability company formed under the laws of Illinois.

12. Venue in this District is also proper venue for this case pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this District. All individual defendants are residents of this District, and numerous corporate defendants are residents of this District (since their headquarters and principal places of business are located in this District and they do business in this District).

## FACTUAL ALLEGATIONS

### Account Application and Onboarding

13. Under the trade name "BlockFills," the corporate defendants operate an online digital asset trading platform that facilitates the buying, selling, exchange, and storage of cryptocurrency.

14. In or about December 2025, Mr. Bertram began communications with BlockFills about 1548199 becoming a customer.

15. On or about December 10, 2025, Mr. Bertram submitted an

application for a BlockFills legal entity account on behalf of 1548199 (the "Application Agreement"). *See* **Exhibit 1**; a blank copy of the Application Agreement is attached hereto as **Exhibit 2**).[2]

16. The Application Agreement contains a critical provision regarding the segregation of customer funds, in which BlockFills represented and agreed to keep customer money "segregated" from Blockfills' working capital:

> Client Money: That as a Professional Client and according to clause 6 of the trading agreement, you hereby acknowledge (unless Blockfills.com agrees is [sic] writing in a separate letter) that;
>
> (1) money deposited by you with Blockfills.com will be segregated from the working capital of Blockfills.com until you execute an order through Blockfills.com; As a consequence of executing an order, Blockfills.com has the right to move your money in any amount not to exceed the amount of the trade to its counterparties at its sole discretion . . .

*See* **Exhibit 2** at Page 7.

17. The Application Agreement also includes and incorporates several additional agreements, including the Professional Electronic Trading Agreement. *See* **Exhibit 2** at Pages 6-7. The application also included a link to view Defendant Reliz Ltd.'s Terms of Business and Client Agreement (the "Terms of Business"). Attached hereto as **Exhibit 3**.

18. Defendant Reliz Ltd. was the drafter of **Exhibit 2** and **Exhibit 3**. Plaintiffs were neither invited nor allowed to edit the documents.

---

[2] At the time of this Complaint, Plaintiffs do not have access to a copy of their executed Application Agreement. Plaintiff Robert J. Bertram's 735 ILCS 5/2-606 Affidavit is attached hereto and hereby made part of this Complaint.

19. After communicating with Ross Kleiman, BlockFills' General Counsel, Plaintiffs executed a Non-Disclosure Agreement with Defendant Reliz Technology Holdings, Inc. on December 12, 2025. Attached hereto as **Exhibit 4**.

20. On December 12, 2025, BlockFills had an initial call with Mr. Bertram to introduce Plaintiffs to the company's system and to guide them through the onboarding process. BlockFills representatives John Divine, Gian Dardet, and Andrew Iwaszkiewicz were present on the call.

21. During the meeting, Mr. Bertram specifically expressed concerns regarding the counterparty risk associated with BlockFills having custody or control of 1548199's digital assets.

22. In response, the representatives stated that BlockFills was "as good as it gets" in the market.

23. The representatives emphasized their background in traditional finance and represented that BlockFills was "unfazed by the October 10 liquidation event" that affected other similar firms; they also stated that BlockFills' operations were "materially more reliable than other market participants."

24. During this meeting, Mr. Bertram informed the representatives that 1548199 did not intend on selling its significant digital assets through BlockFills; instead, they sought to use the assets only as collateral to hedge positions and generate yield.

25. In response, the BlockFills representatives advised Mr. Bertram that asset custody could be structured through a third-party custodian with a tri-party arrangement.

26. To discuss tri-party collateral management and custody arrangements, the BlockFills representatives introduced Plaintiffs to Balance, a third-party digital asset custodian. Thereafter, 1548199 commenced the KYC process with Balance.

27. After the December 12 meeting, but before 1548199 was onboarded as a client or deposited any assets, BlockFills publicly boasted about its recent achievements and expansion in its "2025 Year in Review." Attached hereto as **Exhibit 5** (originally posted on December 30, 2025). The post highlighted that BlockFills transacted over $61.1 billion in volume in 2025, which was up 28% from its 2024 figures. *Id.* BlockFills noted that it serves over 2,000 institutional clients across over 95 countries. *Id.* The year-end update did not address any financial hardships or other concerns facing BlockFills. *Id.*

28. On January 5, 2026, BlockFills accepted 1548199's application and assigned it an account number (No. B16345). *See* **Exhibit 6**. Again, BlockFills circulated a copy of the Terms of Business. *See id.*; **Exhibit 3**.

29. Thereafter, 1548199 was onboarded as a BlockFills client. *See id.*

30. Prior to, during, and after the onboarding process, Plaintiffs had numerous conversations with BlockFills representatives (including Andrew Iwaszkiewicz, John Divine, and Perry Parker).

31. In these conversations, Plaintiffs were very clear that they did not wish to sell any of their cryptocurrency due to Canadian tax considerations; Plaintiffs and BlockFills representatives always referred to BTC and USDC as "collateral" in these discussions.

32. BlockFills advised Plaintiffs that any assets transferred to BlockFills would be put into 1548199's cash portfolio account and that assets would only be moved to a margin account as collateral for each particular trade.

33. BlockFills advised Plaintiffs that the general collateral amount for each trade would be 25 percent.

**The Client Assets**

34. Digital currencies like cryptocurrency are decentralized; they are not held in a bank or other institution.[3] Instead, digital currencies are distributed across a network of computers via a technology called a blockchain. *Id.* When an individual buys cryptocurrency, they receive both a private key and a public key (which together are known as an "address"). A private key is like a password—a string of letters and numbers—that allows the individual to access and manage the cryptocurrency funds. *Id.* A public key works like an e-mail address; it can be safely shared with others to send or receive funds. *Id.* Since cryptocurrency blockchains are open, all public key and transaction

[3] *See What is a Private Key?*, Coinbase, https://www.coinbase.com/learn/crypto-basics/what-is-a-private-key (last visited March 4, 2026).

information is available for anyone to see. *Id.* A digital address (a public key and its corresponding private key) can be stored online in a virtual wallet. *Id.*

35. To begin using their account, Plaintiffs were required to provide BlockFills with information about their banks and cryptocurrency wallets. *See* **Exhibit 6**.

36. Once BlockFills received and approved Plaintiffs' originating wallets, BlockFills' deposit wallets were added manually into 1548199's account by a BlockFills employee.[4] Plaintiffs were encouraged to contact BlockFills representatives to ask for a wallet to be added. *Id.* at 3:22.

37. On January 16, 2026, Plaintiffs funded 1548199's account with 40.001 Bitcoin (BTC) and 650,050 USD Coin (USDC) to be used as collateral (together, the "Client Assets").

38. First, Plaintiffs transferred their 650,050 USDC directly into one of BlockFills' wallets through two transfers of 50 USDC[5] and 650,000 USDC.[6]

39. Next, Plaintiffs transferred their 40.001 BTC from a wallet pre-approved by BlockFills (the "BTC Originating Wallet")[7] to one of

---

[4] *See* "Vision Trader: Settlements Tab Walk-Through" video at 3:15, https://www.youtube.com/watch?v=JBBIQc43vm4&list=PLaqGIpqy4KhpoFL4Nw75MFbf-39zWPzjv&index=8&t=1s (last visited March 4, 2026).

[5] *See* **Exhibit 7**; Transaction Hash ID. No. 0x020166928375c36d8954ba39d64c47348d0e74f157fe4dfabce808840d1a6a86.

[6] *See* **Exhibit 8**; Transaction Hash ID No. 0xd5da20037a8455096c5a3038fe92e10be914990d651769584cbd6f02a43433c7.

[7] *See* **Exhibit 9**; **Exhibit 10**; Wallet No. bc1qaz6hqscqsx26vpyjcla52ftycsvj0wfu0xpga3.

BlockFills' empty wallets (the "BTC Deposit Wallet").[8] Plaintiffs sent the BTC through two transfers of 0.001 BTC and 40 BTC.[9]

40. Within minutes of each transfer, BlockFills representatives confirmed receipt of the received Bitcoin then swept assets out of the BTC Deposit Wallet and into a different wallet.[10] Each sweep was to a wallet controlled completely by BlockFills. *See id.*

41. BlockFills immediately commingled 1548199's BTC with other assets belonging to BlockFills and/or other customers. Within 1.5 hours, the BTC Deposit Wallet was completely empty with a balance of 0 BTC. *See* **Exhibit 10**.

**Suspension of Withdrawals and Admissions of Misappropriation**

42. On February 5, 2026, Mr. Bertram received a call from John Divine, advising that there had been an issue at BlockFills and that the company had defaulted on a customer deposit.

43. During the call, Mr. Bertram asked Mr. Divine to organize a call between Plaintiffs and BlockFills' leadership. The call was scheduled for February 6, 2026, at 10:00 AM CST.

44. On February 6, 2026, at 7:29 AM GMT (1:29 AM CST), Mr. Bertram received an e-mail from BlockFills notifying him that an

[8] *See* Wallet No. 1NCroWLG9GvhtM18kKLx4LjyqSPp9RD6ZJ.

[9] *See* **Exhibit 10**; Transaction Hash ID No. 3741053893fb85477aed7dd83cba35cab0bc684a5872cd5f0885d328d0f7bdff; Transaction Hash ID No. 02e6674fd5e8f222781f7a1836d556ecdecb83e7e23bf4716b763ddafc6639ba.

[10] *See* **Exhibit 10**; Transaction Hash ID No. 20897841f7abecc7d57ee4fbd892840a06fb4a7c6d030dedfe0d7bee8888f0a0; Transaction Hash ID No. b375e53fa34a61dcfcc8ecd0be3c74926446c251d9d099d4adb5b2c2e6f5b55a.

additional bank account had been approved for 1548199's account. Attached hereto as **Exhibit 11**.

45. Notwithstanding the default update from Mr. Divine, the e-mail stated that Plaintiffs could "now fund [their] BlockFills account from [the] approved bank and/or request withdrawals to that bank. For deposit information or to make a withdrawal request, login to the BlockFills Client Portal." *Id.*

46. On February 6, 2026, at 10:00 AM CST, Mr. Bertram attended the scheduled call with BlockFills representatives. Defendant Joseph Perry, Defendant Gordon Wallace, and Mark Renzi (from the Berkeley Research Group, LLC) were present on the call. Mr. Renzi was participating in his capacity as the Chief Restructuring Officer of Defendant Reliz Ltd.

47. During this meeting, Mr. Perry admitted that he had discovered a "large hole" in BlockFills' balance sheet. He further explained that BlockFills was facing a liquidity crisis that made the company unable to honor customer withdrawal requests.

48. Mr. Perry also admitted that BlockFills commingled customer assets with firm assets.

49. Before this call, BlockFills had not previously disclosed any asset commingling or financial issues to Plaintiffs.

50. After the call, on February 6, 2026, at 5:20 PM GMT (11:20 AM CST), BlockFills notified Plaintiffs that they had suspended client

deposits and withdrawals for all customers. *See* E-mail, attached hereto as **Exhibit 12**.

51. As a result of the suspension, Plaintiffs have been unable to withdraw any funds, including Client Assets that they deposited with BlockFills as collateral, from their BlockFills account.

52. Furthermore, Plaintiffs have been prevented from accessing or otherwise exercising its possessory rights over the Client Assets since February 6, 2026, even though such assets are owned by Plaintiffs.

53. On February 6, 2026, at around 3:00 PM GMT (9:00 AM CST), Plaintiffs provided formal written notice to BlockFills rescinding all contracts between the parties. *See* **Exhibit 13**.

54. Plaintiffs concurrently requested the return of the Client Assets deposited into their BlockFills account on January 16, 2026. *See id.*

55. As of the filing of this Complaint, BlockFills has neither returned any portion of the Client Assets, nor provided any assurance or verification that the Client Assets still exist or remain in Blockfills' custody, possession, or control.

56. In a public statement issued on February 11, 2026, BlockFills explained, "In light of recent market and financial conditions, and to further the protection of clients and the firm, BlockFills took the action last week of temporarily suspending client deposits and withdrawals." *See* **Exhibit 14**.

57. To date, BlockFills has held two separate "town hall" meetings with its customers via Zoom on: February 9, 2026 at 9:00 AM CST ("Townhall 1"); and February 20, 2026 at 9:00 AM CST ("Townhall 2").

58. Both meetings were hosted by Mr. Perry and Mr. Wallace on behalf of BlockFills. Mr. Renzi participated in the town halls in his capacity as Chief Restructuring Officer.

59. Mr. Bertram attended both town halls on behalf of 1548199.

60. In these meetings, BlockFills again admitted to the commingling and misappropriating customer assets to cover its own expenses and losses.

61. BlockFills further admitted that it used these commingled customer funds and company assets, without limitation, to cover: expenses for various arbitrations (including for a settlement with Celsius Network); expenses for the purchase of crypto mining equipment; losses in connection with crypto mining operations; losses in connection with crypto mining hedging activities; and losses in connection with unsecured loans made to several entities (including to Aexa Digital Infrastructure, Babel, and CoinSource).

62. During the town halls, Mr. Perry admitted that the payment of these expenses and losses had caused a balance sheet shortfall of $77 million as of December 31, 2025. He further admitted that this negative balance sheet remained the same through early February 2026.

63. During Townhall 1, BlockFills admitted that the language in the Terms of Business (*see* **Exhibit 3**) is "vague" and "not well written." BlockFills further admitted that they did not disclose their financial condition to new customers.

64. At Townhall 1, BlockFills presented slides indicating that the balance sheet shortfall was discovered in August 2025. The slides also included an overview of the operational costs and losses that were paid with the commingled customer assets.

65. Moreover, during Townhall 2, BlockFills admitted that its customers' digital assets were "not segregated per client" and were "not segregated on separate wallets per customer" but were commingled into "one balance sheet."

66. In these meetings, BlockFills admitted that the misappropriation is ongoing.

**Knowledge and Concealment of the Misappropriation**

67. BlockFills intentionally concealed its misuse of funds from its customers, including Plaintiffs.

68. Per Townhall 1, BlockFills' leadership became aware of the misappropriation of customer funds in August 2025.

69. Upon information and belief, at the same time, BlockFills knew of its material financial distress.

70. Upon information and belief, BlockFills retained restructuring

advisors—including Katten Muchin Roseman LLP and Berkeley Research Group, LLC—to develop a preliminary restructuring plan in August 2025.

71. BlockFills retained these advisors based on the knowledge of its financial impairment and insolvency.

72. However, BlockFills did not disclose its material liquidity crisis, financial distress, inability to meet obligations, or existing defaults prior to Plaintiffs prior to their onboarding or prior to the deposits of their Client Assets on January 16, 2026.

73. At no time prior to Plaintiffs' onboarding or the deposits did BlockFills disclose that it had a negative balance sheet.

74. Despite knowingly concealing the misappropriation and balance sheet shortfall, BlockFills continued to accept customer deposits in January 2026, more than five months after they knew of their financial distress.

75. Furthermore, BlockFills continued to solicit trades and funds from clients, including Plaintiffs. *See e.g.*, **Exhibit 11**.

76. BlockFills provided assurances to Plaintiffs that their Client Assets would be held as collateral without forced liquidation risk.

77. BlockFills did not disclose to Plaintiffs that they were operating under known liquidity constraints.

78. Plaintiffs relied on BlockFills' representations of solvency and operational reliability in deciding to deposit the Client Assets as collateral

on January 16, 2026.

79. Plaintiffs' reliance was justified because BlockFills had exclusive knowledge of their financial condition.

80. Had Plaintiffs known of BlockFills' financial distress, they would not have deposited the Client Assets on January 16, 2026.

81. As a result of BlockFills' conduct, Plaintiffs remain unable to access or withdraw the Client Assets or any assets held in their account with BlockFills.

82. Plaintiffs have lost the use of these assets and have suffered economic loss.

83. The value of the Client Assets is substantial and will be determined at trial.

84. In addition to the value of the Client Assets themselves, Plaintiffs have also suffered additional damages, including lost business, investment, and trading opportunities as a result of their inability to access its assets.

85. Plaintiffs have suffered, and will continue to suffer, other consequential damages, including litigation and collection costs, as a result of BlockFills' conduct.

## COUNT 1
## RESCISSION FOR FRAUDULENT INDUCEMENT AND MATERIAL OMISSION

**(Against Defendant Reliz Ltd., Defendant Reliz Technology Group Holdings Inc., and Defendant Reliz Technologies LLC)**

86. Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 85 of this Complaint, as if fully set forth herein.

87. Plaintiffs and BlockFills entered into contracts governing Plaintiffs' BlockFills account, including the Application Agreement and the Terms of Business. *See* **Exhibit 2**; **Exhibit 3**.

88. These agreements governed the deposit and custody of Plaintiffs' digital assets.

89. By way of summary and not limitation, BlockFills made misrepresentations of material facts to Plaintiffs in December 2025 and January 2026, including that: BlockFills was "as good as it gets" in the market; BlockFills were "unfazed by the October 10 liquidation event" affecting other crypto firms; and BlockFills' operations were "materially more reliable than other market participants."

90. These representations were false because BlockFills knew of their material financial distress as early as August 2025.

91. Further, BlockFills omitted material facts necessary to make their representations not misleading.

92. By way of summary and not limitation, BlockFills failed to disclose that: they had a negative balance sheet of approximately $77 million

dollars; they had retained a Chief Restructuring Officer in August 2025; they were commingling customer assets with firm assets; they were using customer funds to satisfy corporate liabilities; they were operating under known liquidity constraints; and they were unable to honor customer withdrawals.

93. These omissions were material because they related to BlockFills' ability to safeguard Plaintiffs' assets and meet their obligations.

94. At the time the representations were made to Plaintiffs, BlockFills knew or believed that they were false or made them with reckless indifference to the truth.

95. BlockFills knew of their financial distress in August 2025, more than five months before Plaintiffs' deposits.

96. BlockFills knew they were commingling customer assets and using customer funds for improper corporate purposes.

97. BlockFills intended to induce Plaintiffs to deposit assets.

98. BlockFills continued to solicit and accept customer deposits, including Plaintiffs' funds, despite knowledge of insolvency.

99. BlockFills' purpose in making representations and omitting material facts was to induce Plaintiffs to deposit assets.

100. Plaintiffs did not know the falsity of the representations and reasonably believed the statements to be true.

101. Plaintiffs reasonably relied on BlockFills' representations and

omissions to their detriment.

102. Relying on the truth of BlockFills' statements, Plaintiffs deposited 40.001 BTC and 650,050 USDC in reasonable reliance on BlockFills' representations on January 16, 2026.

103. Plaintiffs would not have deposited these assets had BlockFills disclosed their financial distress.

104. Plaintiffs' reliance was justified.

105. BlockFills had exclusive knowledge of their financial condition.

106. BlockFills made affirmative representations of reliability and solvency.

107. Plaintiffs had no reason to believe BlockFills was insolvent or financially distressed.

108. Plaintiffs have suffered and will continue to suffer damages as a result of their reliance on BlockFills' misrepresentations and omissions.

109. Upon discovery of BlockFills' fraudulent representations, Plaintiffs formally provided written notice to BlockFills rescinding all the parties' agreements on February 6, 2026. *See* **Exhibit 13**.

110. Plaintiffs concurrently demanded the return of the Client Assets deposited on January 16, 2026, with a reservation of all rights and remedies. *See id.*

111. Despite such demands, BlockFills has neither returned any portion of the Client Assets, nor provided any assurance or verification that the

Client Assets still exist or remain in Blockfills' custody, possession, or control.

112. 1548199 remains unable to access or withdraw the deposited assets.

113. Plaintiffs have lost the use of the assets and have suffered economic loss.

114. The value of Plaintiffs' transferred assets is approximately $4,470,705.52 or more depending on BTC market price.

115. Plaintiffs have no adequate remedy at law.

116. Plaintiffs hereby restate their intent to rescind the parties' contracts. Because the contracts were induced through fraud and material omissions, Plaintiffs seek rescission *ab initio*, rendering the agreements void from inception. Plaintiffs hereby restate their intent to restore both parties to the pre-contract status quo.

WHEREFORE, Plaintiffs 1548199 ALBERTA LTD. and ROBERT J. BERTRAM hereby request that this Honorable Court enter judgement in their favor and against Defendants RELIZ LTD., RELIZ TECHNOLOGY GROUP HOLDINGS INC., and RELIZ TECHNOLOGIES LLC, by ordering: the rescission of the contracts between the parties (thereby voiding the contracts and restoring the parties to their pre-contract status quo); the return of the Client Assets initially deposited by Plaintiffs into their BlockFills account (40.001 BTC and 650,050 USDC); consequential

damages, along with attorney's fees and costs; and any such other and further relief as the court may deem proper.

**COUNT 2**
**BREACH OF CONTRACT (IN THE ALTERNATIVE)**

**(Against Defendant Reliz Ltd., Defendant Reliz Technology Group Holdings Inc., and Defendant Reliz Technologies LLC)**

117. Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 85 of this Complaint, as if fully set forth herein.

118. Valid contracts existed between Plaintiffs and BlockFills governing Plaintiffs' BlockFills account, including the Application Agreement and the Terms of Business. *See* **Exhibit 2**; **Exhibit 3**.

119. Plaintiffs performed their obligations under these contracts by completing the application and onboarding processes in good faith and by depositing digital assets as collateral.

120. Plaintiffs deposited 40.001 BTC and 650,050 USDC (the "Client Assets") into their BlockFills account as anticipated by the agreements.

121. The Application Agreement explicitly provides that money deposited by customers with BlockFills will be segregated from their working capital. *See* **Exhibit 2** at Page 7.

122. Pursuant to the Application Agreement, BlockFills warranted and agreed to keep 1548199's funds segregated from its working capital and, when 1548199 is placing an order, to move money only in the amount of the trade. *Id.*

123. BlockFills breached the Application Agreement by failing to keep

1548199's funds segregated and failing to use the funds for trades by 1548199 only.

124. The Terms of Business explicitly states that any provide that money deposited by 1548199 into its BlockFills account will be treated "in accordance with standard account segregation rules except where [1548199] enters into an agreement with BlockFills to transfer full ownership of money to BlockFills." **Exhibit 3** at Section 13; *see also* Page 17 (Authorization to Transfer Funds).

125. 1548199 did not enter into an agreement with BlockFills to transfer full ownership of any of the deposited Client Assets to BlockFills.

126. Pursuant to the Terms of Business, BlockFills warranted and agreed to keep 1548199's funds segregated from their working capital and from other customer accounts.

127. BlockFills breached the Terms of Business by failing to keep 1548199's funds segregated.

128. During the town halls, and during separate phone calls with Mr. Bertram, BlockFills admitted that its customers' digital assets were "not segregated per client" and were "not segregated on separate wallets per customer."

129. Furthermore, within minutes of each of 1548199's Bitcoin transfers, BlockFills representatives confirmed receipt then swept the BTC into a different wallet controlled completely by BlockFills.

130. BlockFills immediately commingled 1548199's BTC with other

assets belonging to BlockFills and/or other customers.

131. Upon information and belief, BlockFills further breached the Application Agreement and the Terms of Business by using 1548199's assets to pay for its own expenses.

132. BlockFills breached its contracts with 1548199 by commingling the Client Assets with firm assets in violation of its custody obligations.

133. The Application Agreement and the Terms of Business include an implied covenant of good faith and fair dealing. This implied covenant requires each contracting party not to do anything that will have the effect of destroying or injuring the other party's right to receive its bargained-for benefits under the Application Agreement.

134. Further, BlockFills implied covenant of good faith and fair dealing by failing to disclose material information to 1548199 regarding its financial condition.

135. BlockFills breached the implied covenant of good faith and fair dealing by misappropriating 1548199's funds for its own use.

136. BlockFills breached the implied covenant of good faith and fair dealing by concealing its misappropriation of 1548199's funds.

137. BlockFills breached the implied covenant of good faith and fair dealing by suspending customer withdrawals in February 2026.

138. BlockFills breached the implied covenant of good faith and fair dealing by refusing to return 1548199's funds.

139. BlockFills had a duty to perform their obligations under the

contracts in good faith.

140. BlockFills failed to act in good faith by concealing their known insolvency while continuing to onboard 1548199 as a new client accept deposits from 1548199 as collateral.

141. BlockFills failed to act in good faith by concealing their known insolvency while continuing to accept deposits and assets from 1548199.

142. 1548199 suffered damages as a result of BlockFills' breach.

143. To date, 1548199 is unable to access or withdraw its funds in its BlockFills account. 1548199 has lost the use of the assets.

144. As a direct and proximate result of BlockFills' breaches of contract, 1548199 suffered damages in an amount to be determined at trial but, at a minimum, the equivalent value of 40.001 BTC and 650,050 USDC.

145. 1548199 has also suffered additional damages, including, but not limited to, lost trading opportunities and other consequential damages, including collections costs and attorneys' fees.

WHEREFORE, Plaintiffs 1548199 ALBERTA LTD. and ROBERT J. BERTRAM hereby request that this Honorable Court enter judgement in their favor and against Defendants RELIZ LTD., RELIZ TECHNOLOGY GROUP HOLDINGS INC., and RELIZ TECHNOLOGIES LLC in an amount to be proved at trial, not less than 40.001 BTC and 650,050 USDC, along with punitive damages, pre-judgement interest and attorney's fees and costs.

**COUNT 3**
**UNJUST ENRICHMENT (IN THE ALTERNATIVE)**

**(Against Defendant Reliz Ltd., Defendant Reliz Technology Group Holdings Inc., and Defendant Reliz Technologies LLC)**

146. Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 85 of this Complaint, as if fully set forth herein.

147. Plaintiffs plead this Count in the alternative to counts alleging breach of contract.

148. 1548199 conferred benefits on BlockFills by transmitting cryptocurrency assets to BlockFills and by making trades through BlockFills' platform, generating fees and revenue for BlockFills.

149. 1548199 deposited 40.001 BTC and 650,050 USDC in its BlockFills cash account as collateral on January 16, 2026.

150. BlockFills accepted 1548199's deposits.

151. BlockFills accepted and appreciated the benefit conferred by 1548199.

152. BlockFills' retention of the benefit is unjust.

153. BlockFills was obligated to segregate customer funds and assets and use them only in connection with authorized customer trades and in accordance with other customer direction, not for BlockFills' corporate purposes.

154. Upon information and belief, BlockFills used 1548199's funds and assets to cover corporate expenses (including litigation settlements and losses in connection with mining operations, mining equipment

purchases, and mining hedging activities).

155. BlockFills obtained 1548199's assets through fraudulent inducement.

156. BlockFills made material misrepresentations and omissions regarding their financial condition.

157. BlockFills obtained 1548199's assets while knowing they were insolvent and unable to meet obligations.

158. BlockFills concealed the misappropriation of customer funds from 1548199 before, during, and after it completed the application and onboarding processes, which prevented 1548199 from taking action to protect its interests.

159. BlockFills concealed the misappropriation of customer funds from 1548199 before, during, and after 1548199 deposited the Client Assets into its BlockFills account, which prevented 1548199 from taking action to protect its interests.

160. Then, BlockFills suspended withdrawals and refused to return 1548199's assets, despite its formal written request on February 6, 2026.

161. Retention of 1548199's assets violates fundamental principles of justice, equity, and good conscience.

162. BlockFills knew that they were insolvent when they accepted 1548199's deposits.

163. BlockFills concealed their insolvency from 1548199.

164. BlockFills used 1548199's assets to pay corporate liabilities rather

than safeguarding them.

165. It would be inequitable to allow BlockFills to retain the benefit of having access to, and the use of, 1548199's assets when BlockFills used those assets for unauthorized purposes and then refused to return them.

166. Plaintiffs have no adequate remedy at law.

167. BlockFills are insolvent with a negative balance sheet.

168. BlockFills are unable to satisfy a monetary judgment.

169. Equitable remedies including constructive trust and restitution provide more adequate relief.

170. 1548199 suffered damages as a result of BlockFills' unjust enrichment, including its inability to access or possess its assets held in its BlockFills account.

171. The value of the Client Assets is substantial and will be determined at trial but, at a minimum, is equivalent to the value of 40.001 BTC and 650,050 USDC.

172. 1548199 has also suffered additional damages, including, but not limited to, lost trading opportunities and other consequential damages, including collections costs and attorneys' fees.

WHEREFORE, Plaintiffs 1548199 ALBERTA LTD. and ROBERT J. BERTRAM hereby request that this Honorable Court enter judgement in their favor and against Defendants RELIZ LTD., RELIZ TECHNOLOGY GROUP HOLDINGS INC., and RELIZ TECHNOLOGIES LLC in an amount to be proved at trial, not less than 40.001 BTC and 650,050 USDC, along

with pre-judgement interest and attorney's fees and costs.

## COUNT 4
## FRAUD

### (Against Defendant Reliz Ltd., Defendant Reliz Technology Group Holdings Inc., and Defendant Reliz Technologies LLC)

173. Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 85 of this Complaint, as if fully set forth herein.

174. BlockFills made misrepresentations of material fact to Plaintiffs, including but not limited to that: BlockFills was "as good as it gets" in the market; BlockFills was "unfazed by the October 10 liquidation event;" and BlockFills' operations were "materially more reliable than other market participants."

175. These representations were false.

176. BlockFills' leadership knew of its material financial distress as early as August 2025.

177. BlockFills had a duty to keep the assets of 1548199 and other customers segregated, which arose from the contractual relationship between 1548199 and BlockFills (and further due to the fact that BlockFills was holding 1548199's assets in trust).

178. However, beginning by no later than 2025, BlockFills improperly commingled customer assets and used customer assets (the "Misappropriation").

179. Before, during, and after 1548199 completed the application and onboarding processes, BlockFills: had retained restructuring advisors

due to financial impairment in August 2025; had a negative balance sheet of approximately $77 million; had been commingling customer assets; and had been using commingled customer funds for corporate liabilities. These facts, including the Misappropriation, were material facts that BlockFills was obligated to immediately disclose to 1548199. BlockFills concealed these material facts from 1548199 during the application and onboarding processes.

180. Before, during, and after 1548199 deposited Client Assets, BlockFills: had retained restructuring advisors due to financial impairment in August 2025; a negative balance sheet of approximately $77 million; been commingling customer assets; and been using commingled customer funds for corporate liabilities. These facts, including the Misappropriation, were material facts that BlockFills was obligated to immediately disclose to 1548199. BlockFills concealed these material facts from 1548199 before and after the Client Assets were deposited for collateral.

181. BlockFills had a duty to disclose these material facts.

182. BlockFills had a fiduciary or confidential relationship with Plaintiffs as a custodian of customer assets. BlockFills directors and officers also had a fiduciary relationship with creditors like Plaintiffs once the company entered the zone of insolvency.

183. BlockFills' silence alone constituted fraudulent concealment given the fiduciary relationship.

184. BlockFills acted with scienter.

185. BlockFills knew of their financial distress in August 2025.

186. BlockFills knew that 1548199 was not aware of the financial distress, the Misappropriation, or the other omitted material facts.

187. BlockFills continued to solicit deposits from 1548199 without disclosure. This conduct demonstrates BlockFills' intent to deceive or its reckless disregard for truth.

188. BlockFills intended to induce Plaintiffs to act.

189. BlockFills' purpose in making misrepresentations and concealing facts was to induce Plaintiffs to deposit assets and to refrain from withdrawing funds.

190. BlockFills needed new deposits to maintain operations and satisfy existing obligations.

191. BlockFills intended that 1548199 rely on its concealment.

192. BlockFills knew or should have known that 1548199 relied on BlockFills to immediately notify it of any misappropriation.

193. Plaintiffs justifiably relied on BlockFills' misrepresentations and concealment.

194. Plaintiffs deposited 40.001 BTC and 650,050 USDC as collateral in reliance on BlockFills' representations.

195. Plaintiff's reliance was justified because BlockFills had exclusive knowledge of their financial condition.

196. BlockFills made affirmative representations of reliability and solvency.

197. Plaintiffs had no reason to believe BlockFills was insolvent or misappropriating funds.

198. If BlockFills disclosed its financial distress, Plaintiffs would not have applied to be a client or deposited the Client Assets.

199. To date, Plaintiffs remain unable to access or recover the Client Assets deposited as collateral on January 16, 2026.

200. BlockFills did not disclose the Misappropriation and the other omitted material facts to 1548199 until February 2026.

201. The misrepresentations and concealment caused Plaintiffs' injury and prevented Plaintiffs from taking action to protect their interests.

202. Plaintiffs suffered damages including its inability to access or possess the Client Assets held in its BlockFills account.

203. But for BlockFills' fraud, Plaintiffs would not have suffered damages.

204. Plaintiffs suffered economic loss in an amount to be determined at trial but, at a minimum, the equivalent value of 40.001 BTC and 650,050 USDC.

205. 1548199 has also suffered additional damages, including, but not limited to, lost trading opportunities and other consequential damages, including collections costs and attorneys' fees.

WHEREFORE, Plaintiffs 1548199 ALBERTA LTD. and ROBERT J.

BERTRAM hereby request that this Honorable Court enter judgement in their favor and against Defendants RELIZ LTD., RELIZ TECHNOLOGY GROUP HOLDINGS INC., and RELIZ TECHNOLOGIES LLC, in an amount to be proved at trial, not less than 40.001 BTC and 650,050 USDC, along with punitive damages, pre-judgement interest and attorney's fees and costs.

## COUNT 5
## AIDING AND ABETTING FRAUD

**(Against Defendants Nicholas Hammer, Joseph Perry, and Gordon Wallace)**

206. Plaintiffs repeat and reallege the allegations of Paragraphs 1-85 and 173-205 of this Complaint, as if fully set forth herein.

207. BlockFills committed fraud by misrepresenting solvency, concealing financial distress, and misappropriating client assets.

208. BlockFills made material misrepresentations and omissions to induce Plaintiffs to deposit the Client Assets and refrain from withdrawing funds.

209. Individual BlockFills representatives had knowledge of the fraud.

210. Defendants Hammer, Perry, and Wallace had knowledge of BlockFills' financial distress.

211. Defendant Perry admitted during the town hall meetings that financial distress was known in August 2025.

212. These individual defendants knew or should have known that the representations made to 1548199 were false.

213. The individual defendants provided substantial assistance to the fraud.

214. Defendant Hammer, as former CEO and Co-Founder of Defendant Reliz Ltd., directed or approved the misappropriation of funds and failed to ensure the proper disclosure of financial condition.

215. Defendant Wallace, as President and Co-Founder of Defendant Reliz Ltd., directed or approved the misappropriation of funds, continued the acceptance of client deposits during the company's known insolvency, and failed to ensure the proper disclosure of financial condition.

216. Defendant Perry, as Interim CEO of Defendant Reliz Ltd., directed or approved the misappropriation of funds, continued the acceptance of client deposits during the company's known insolvency, and failed to ensure the proper disclosure of financial condition.

217. The individual defendants intended to facilitate the fraud.

218. The individual defendants knew that their actions would induce Plaintiffs to deposit assets.

219. The individual defendants intended to continue operations by accepting new deposits despite insolvency.

220. The individual defendants' actions were taken with the purpose of facilitating BlockFills' fraud.

221. The individual defendants intended that 1548199 rely on their actions and their concealment.

222. The individual defendants knew or should have known that 1548199 relied on them to immediately notify it of any misappropriation.

223. Plaintiffs justifiably relied on the individual defendants' misrepresentations and concealment.

224. Plaintiffs deposited 40.001 BTC and 650,050 USDC as collateral in reliance on the individual defendants' representations.

225. Plaintiff's reliance was justified because the individual defendants had exclusive knowledge of their financial condition.

226. The individual defendants made affirmative representations of reliability and solvency.

227. Based on the representations of the individual defendants, Plaintiffs had no reason to believe BlockFills was insolvent or misappropriating funds.

228. If the individual defendants disclosed BlockFills' financial distress, Plaintiffs would not have applied to be a client or deposited the Client Assets.

229. To date, Plaintiffs remain unable to access or recover the Client Assets deposited as collateral on January 16, 2026.

230. The individual defendants did not disclose the Misappropriation and the other omitted material facts to 1548199 until February 2026.

231. The misrepresentations and concealment caused Plaintiffs' injury and prevented Plaintiffs from taking action to protect their interests.

232. Plaintiffs suffered damages including the inability to access or

possess the Client Assets held in their BlockFills account.

233. But for BlockFills' fraud, Plaintiffs would not have suffered damages.

234. Plaintiffs suffered economic loss in an amount to be determined at trial but, at a minimum, the equivalent value of 40.001 BTC and 650,050 USDC.

235. 1548199 has also suffered additional damages, including, but not limited to, lost trading opportunities and other consequential damages, including collections costs and attorneys' fees.

WHEREFORE, Plaintiffs 1548199 ALBERTA LTD. and ROBERT J. BERTRAM hereby request that this Honorable Court enter judgement in their favor and against Defendants NICHOLAS HAMMER, JOSEPH PERRY, and GORDON WALLACE, in an amount to be proved at trial, not less than 40.001 BTC and 650,050 USDC, along with punitive damages, pre-judgement interest and attorney's fees and costs.

## COUNT 6
## NEGLIGENT MISREPRESENTATION

**(Against Defendant Reliz Ltd., Defendant Reliz Technology Group Holdings Inc., and Defendant Reliz Technologies LLC)**

236. Plaintiffs repeat and reallege the allegations of Paragraphs 1-85 and 173-235 of this Complaint, as if fully set forth herein.

237. BlockFills made misrepresentations of material fact to Plaintiffs, including but not limited to that: BlockFills was "as good as it gets" in the market; BlockFills was "unfazed by the October 10 liquidation event;"

and BlockFills' operations were "materially more reliable than other market participants."

238. These representations were false.

239. BlockFills was negligent in making the misrepresentations.

240. BlockFills failed to verify the accuracy of their representations.

241. BlockFills failed to disclose material information regarding financial distress that made their representations misleading.

242. BlockFills knew or should have known that their representations were false or misleading.

243. Plaintiffs justifiably relied on BlockFills' misrepresentations.

244. Plaintiffs deposited 40.001 BTC and 650,050 USDC as collateral in reliance on BlockFills' representations.

245. Plaintiffs' reliance was justified because BlockFills held themselves out as reliable and solvent.

246. The misrepresentations caused Plaintiffs' injury.

247. Plaintiffs would not have deposited assets had BlockFills disclosed its financial distress.

248. Plaintiff transferred the Client Assets based on negligent misrepresentation.

249. But for BlockFills' negligent misrepresentations, Plaintiffs would not have suffered damages.

250. Plaintiffs suffered damages including its inability to access and possess the Client Assets held in its BlockFills account.

251. To date, Plaintiffs remain unable to access or recover the Client Assets.

252. Plaintiffs suffered economic loss in an amount to be determined at trial but, at a minimum, the equivalent value of 40.001 BTC and 650,050 USDC.

253. 1548199 has also suffered additional damages, including, but not limited to, lost trading opportunities and other consequential damages, including collections costs and attorneys' fees.

WHEREFORE, Plaintiffs 1548199 ALBERTA LTD. and ROBERT J. BERTRAM hereby request that this Honorable Court enter judgement in their favor and against Defendants RELIZ LTD., RELIZ TECHNOLOGY GROUP HOLDINGS INC., and RELIZ TECHNOLOGIES LLC, in an amount to be proved at trial, not less than 40.001 BTC and 650,050 USDC, along with punitive damages, pre-judgement interest and attorney's fees and costs.

## COUNT 7
## CONVERSION

### (Against Defendant Reliz Ltd., Defendant Reliz Technology Group Holdings Inc., and Defendant Reliz Technologies LLC)

254. Plaintiffs repeat and reallege the allegations of Paragraphs 1-85 and 173-253 of this Complaint, as if fully set forth herein.

255. 1548199 owns and has a right to the 40.001 BTC and 640,050.00 USDC deposited in its BlockFills cash account on January 16, 2026 (the "Client Assets").

256. 1548199 has an absolute and unconditional right to the immediate possession of the Client Assets.

257. 1548199 made a demand for possession and redemption of the Client Assets on February 6, 2026. *See* **Exhibit 13**.

258. BlockFills wrongfully and without authorization assumed control, dominion, or ownership over the Client Assets by blocking withdrawals.

259. Plaintiffs had the right to withdraw the assets from BlockFills' custody.

260. As cryptocurrency property assets, the Client Assets are specific and identifiable assets in 1548199's BlockFills account.

261. The Application Agreement and the Terms of Business confirmed that 1548199's assets would be segregated and held for the benefit of 1548199.

262. Plaintiffs deposited the Client Assets for custody and collateral purposes, not for BlockFills' unrestricted use.

263. Plaintiffs did not authorize BlockFills to commingle assets or use them for corporate liabilities.

264. BlockFills' use of the Client Assets for its own corporate purposes exceeded any authorization.

265. BlockFills has exercised unauthorized dominion and control over the Client Assets by denying 1548199 their right to access their assets as a result of the purported "suspension" of withdrawals. Upon information and belief, BlockFills has further exercised unauthorized dominion and

control over the Client Assets by commingling them with firm assets and using them to pay for BlockFills' own expenses and losses.

266. BlockFills' use of the Client Assets was to the exclusion of 1548199's rights and without 1548199's authorization.

267. This use was unauthorized because the Application Agreement and the Terms of Business explicitly required that customer funds be segregated and used only in connection with customer trades, not for BlockFills' own corporate expenses.

268. BlockFills intended to exercise dominion or control over the Client Assets.

269. BlockFills intentionally commingled Plaintiffs' assets with firm assets and intentionally used customer funds for corporate purposes.

270. BlockFills' use of the Client Assets for corporate expenses demonstrates an intent to treat the funds as its own property rather than as customer property held in trust.

271. BlockFills suspended withdrawals on February 6, 2026, intentionally preventing 1548199 from accessing or withdrawing the Client Assets.

272. To date, 1548199 remains unable to access or withdraw the Client Assets. 1548199 has lost the use of the Client Assets.

273. BlockFills has refused 1548199's redemption request (submitted on February 6, 2026), further demonstrating BlockFills' intent to exercise improper dominion and control over the Client Assets.

274. BlockFills continues to deplete customer assets, including 1548199's Client Assets.

275. As a direct and proximate result of BlockFills' conversion, 1548199 suffered damages in an amount to be determined at trial but, at a minimum, the equivalent value of 40.001 BTC and 650,050 USDC.

276. 1548199 has also suffered additional damages, including, but not limited to, lost trading opportunities and other consequential damages, including collection costs and attorneys' fees.

WHEREFORE, Plaintiffs 1548199 ALBERTA LTD. and ROBERT J. BERTRAM hereby request that this Honorable Court enter judgement in their favor and against Defendants RELIZ LTD., RELIZ TECHNOLOGY GROUP HOLDINGS INC., and RELIZ TECHNOLOGIES LLC, ordering them to hold in trust (for delivery to Plaintiffs upon this Honorable Court's order) all converted funds in an amount to be proved at trial, not less than 40.001 BTC and 650,050 USDC, plus punitive damages in an amount to be determined by this Honorable Court.

**COUNT 8**
**CONSTRUCTIVE TRUST**

**(Against Defendant Reliz Ltd., Defendant Reliz Technology Group Holdings Inc., and Defendant Reliz Technologies LLC)**

277. Plaintiffs repeat and reallege the allegations of Paragraphs 1-85 and 173-276 of this Complaint, as if fully set forth herein.

278. On January 16, 2026, Plaintiffs transferred 40.001 BTC and 650,050 USDC to BlockFills as collateral and for custody.

279. Plaintiffs have legal and equitable title to the transferred property.

280. Plaintiffs retained beneficial ownership of the transferred assets.

281. Plaintiffs intended the assets to be held in custody, not transferred absolutely to BlockFills.

282. BlockFills acquired the property through wrongful conduct.

283. BlockFills obtained Plaintiffs' assets through fraudulent inducement.

284. BlockFills made material misrepresentations regarding their financial condition and operational reliability.

285. BlockFills omitted material facts regarding their insolvency and commingling of customer assets.

286. BlockFills obtained Plaintiffs' assets through breach of fiduciary duty.

287. BlockFills owed fiduciary duties to Plaintiffs as custodian of customer assets. BlockFills directors and officers also had a fiduciary relationship with creditors like Plaintiffs once the company entered the zone of insolvency.

288. BlockFills breached their duty of loyalty by commingling customer assets with firm assets.

289. BlockFills breached their duty of care by failing to maintain solvency.

290. BlockFills breached their duty of disclosure by failing to disclose its material financial distress.

291. BlockFills received the property in trust capacity or with knowledge of Plaintiffs' rights.

292. BlockFills held Plaintiffs' assets in custody capacity.

293. BlockFills represented that assets would be segregated and safeguarded.

294. BlockFills had knowledge of Plaintiffs' beneficial ownership and rights to the assets.

295. Plaintiffs' property can be identified and traced into BlockFills' hands through blockchain records and BlockFills' custody records.

296. Blockchain evidence shows that the BTC transferred by Plaintiffs to a unique wallet address provided by BlockFills was swept out within minutes to different wallets.

297. The different wallets are controlled by BlockFills.

298. Plaintiffs also transferred USDC to BlockFills' designated wallet as requested.

299. The transferred assets can also be identified and traced through blockchain records and BlockFills' custody records.

300. Legal remedies are inadequate.

301. BlockFills is insolvent with a negative balance sheet of approximately $77 million.

302. BlockFills is unable to satisfy a monetary judgment.

303. A constructive trust provides a priority claim to specific assets.

304. A constructive trust is necessary to prevent unjust enrichment and protect Plaintiffs' property rights.

WHEREFORE, Plaintiffs 1548199 ALBERTA LTD. and ROBERT J. BERTRAM hereby request that this Honorable Court enter judgement in their favor and against Defendants RELIZ LTD., RELIZ TECHNOLOGY GROUP HOLDINGS INC., and RELIZ TECHNOLOGIES LLC, ordering them to hold in trust (for delivery to Plaintiffs upon this Honorable Court's order) all converted funds in an amount to be proved at trial, not less than 40.001 BTC and 650,050 USDC, plus punitive damages in an amount to be determined by this Honorable Court.

**COUNT 9**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT**

**(Against Defendant Reliz Ltd., Defendant Reliz Technology Group Holdings Inc., and Defendant Reliz Technologies LLC)**

305. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-85 and 173-304 of this Complaint as if fully set forth herein.

306. BlockFills had a duty to keep the funds of 1548199 and other customers segregated and use them only in connection with customer trades or as collateral.

307. That duty arose from the contractual relationship between 1548199 and BlockFills (and the fact that BlockFills was holding 1548199’s funds in trust).

308. However, beginning by no later than 2025, BlockFills improperly commingled customer funds with company assets, then used the

commingled funds (which include, upon information and belief, the Client Assets) to pay for certain expenses of BlockFills, including but not limited to expenses for litigation settlements and losses in connection with mining and mining hedging (the "Misappropriation").

309. The Misappropriation was a deceptive practice that had the tendency or capacity to mislead or deceive customers.

310. Upon information and belief, BlockFills' leadership discovered the Misappropriation by no later than August 2025.

311. BlockFills knew that 1548199 was not aware of the Misappropriation.

312. BlockFills knew or should have known that 1548199 relied on BlockFills to immediately notify it of any misappropriation.

313. BlockFills did not disclose the Misappropriation to 1548199 until early February 2026.

314. This concealment was a deceptive practice that had the tendency or capacity to mislead or deceive customers.

315. BlockFills intended that 1548199 rely on its concealment of the Misappropriation.

316. BlockFills intended to induce 1548199 to continue depositing funds and to refrain from withdrawing funds by concealing the Misappropriation.

317. In fact, in February 2026, BlockFills contacted Dominion to solicit further trades. *See* **Exhibit 11.**

318. 1548199 reasonably relied on BlockFills not to misappropriate its funds and to immediately disclose any misappropriation of its funds.

319. 1548199 had no reason to believe that BlockFills was misappropriating customer funds.

320. On February 6, 2026, BlockFills suspended withdrawals for all customers, including 1548199, preventing customers from accessing their funds and assets.

321. This conduct was an unfair practice that caused substantial injury to 1548199.

322. On February 6, 2026, once it learned of BlockFills' actions, 1548199 formally requested redemption of 40.001 BTC and 650,050 USDC but BlockFills has refused to return the Client Funds or rescind the parties' contracts.

323. This conduct was an unfair practice that caused substantial injury to 1548199.

324. The Application Agreement and the Terms of Business were entered into in the course of BlockFills' business operations.

325. BlockFills' deceptive, unfair and unlawful conduct occurred in trade or commerce: namely, in the context of BlockFills' business of providing cryptocurrency trading services to customers.

326. 1548199 suffered actual damages proximately caused by BlockFills' deceptive and unfair practices.

327. BlockFills' concealment of the Misappropriation prevented 1548199 from taking action to protect its interests.

328. If 1548199 had known of the Misappropriation, 1548199 would have immediately withdrawn its funds and ceased doing business with BlockFills.

329. As a result of BlockFills' unfair and deceptive practices, 1548199 has been deprived access to the 40.001 BTC and 650,050 USCD deposited in its account with BlockFills as collateral.

330. If 1548199 had known of the Misappropriation, 1548199 could have withdrawn its Bitcoin from this account and could have undertaken other strategies or actions to guard against the loss of value in Bitcoin which has occurred since August 2025, which price has in fact fallen from August 2025 to February 2026 when the Misappropriation was disclosed.

331. 1548199 has also suffered other consequential damages, including, but not limited to, lost trading opportunities, as well as collection costs and attorneys' fees.

WHEREFORE, Plaintiffs 1548199 ALBERTA LTD. and ROBERT J. BERTRAM hereby request that this Honorable Court enter judgement in their favor and against Defendants RELIZ LTD., RELIZ TECHNOLOGY GROUP HOLDINGS INC., and RELIZ TECHNOLOGIES LLC in an amount to be proved at trial, not less than 40.001 BTC and 650,050 USDC, along with punitive damages, pre-judgement interest and attorney's fees and costs.

## COUNT 10
## BREACH OF FIDUCIARY DUTY

### (Against Defendant Hammer, Defendant Wallace, Defendant Perry, and Defendant Reliz CI Ltd.)

332. Plaintiffs repeat and reallege the allegations of Paragraphs 1-85 and 173-331 of this Complaint, as if fully set forth herein.

333. Defendant Reliz CI Ltd. is the sole director of Defendant Reliz Ltd.

334. Defendant Joseph Patrick Perry is the sole director of Defendant Reliz CI Ltd. As the interim Chief Executive Officer, he is also an officer of Defendant Reliz Ltd.

335. Defendant Gordan Wallace is an officer of Defendant Reliz Ltd. As a manager, he is also a director of Defendant Reliz Technologies LLC.

336. Defendant Nicholas Hammer is a director of Defendant Reliz Technologies LLC.

337. BlockFills' directors and officers also had a fiduciary relationship with creditors like Plaintiffs once the company entered the zone of insolvency.

338. Defendant Reliz CI Ltd., as a director of BlockFills, owed fiduciary duties to Plaintiffs.

339. Defendant Perry, as a director of BlockFills, owed fiduciary duties to Plaintiffs.

340. Defendant Wallace, as a director of BlockFills, owed fiduciary duties to Plaintiffs.

341. Defendant Hammer, as a director of BlockFills, owed fiduciary

duties to Plaintiffs.

342. These duties included the duty to act in the best interests of the company with regard to the interests of BlockFills' creditors.

343. Defendants Reliz CI Ltd, Perry, Wallace, and Hammer breached their duties.

344. Defendants Reliz CI Ltd, Perry, Wallace, and Hammer are personally liable for the financial losses they caused to BlockFills (that, in turn, they caused to its creditors like Plaintiffs) while acting in breach of their duties.

345. By way of example and not limitation, these losses include any additional liabilities incurred by BlockFills when the directors knew, or should have known, that there was no reasonable prospect of the company to pay the liabilities or avoid insolvency.

346. By way of example and not limitation, these losses include those incurred while the business of BlockFills was carried on with the intent to defraud creditors.

347. Defendants Reliz CI Ltd, Perry, Wallace, and Hammer knew that BlockFills was in the zone of insolvency in August 2025.

348. In breach of their fiduciary duties, these defendants continued the Misappropriation after August 2025.

349. In breach of their fiduciary duties, these defendants solicited new customers like Plaintiffs after August 2025.

350. In breach of their fiduciary duties, these defendants solicited deposits from Plaintiffs after August 2025.

351. As a result of the breaches, Plaintiffs suffered damages including their inability to access or possess the Client Assets held in their BlockFills account.

352. As a result of these breaches, Plaintiffs suffered economic loss in an amount to be determined at trial but, at a minimum, the equivalent value of 40.001 BTC and 650,050 USDC.

WHEREFORE, Plaintiffs 1548199 ALBERTA LTD. and ROBERT J. BERTRAM hereby request that this Honorable Court enter judgement in their favor and against Defendants RELIZ CI LTD., JOSEPH PATRICK PERRY, GORDAN WALLACE, and NICHOLAS HAMMER, in an amount to be proved at trial, not less than 40.001 BTC and 650,050 USDC, along with punitive damages, pre-judgement interest and attorney's fees and costs.

**COUNT 11**
**DECLARATORY JUDGMENT**

**(Against Defendant Reliz Ltd., Defendant Reliz Technology Group Holdings Inc., and Defendant Reliz Technologies LLC)**

353. Plaintiffs repeat and reallege the allegations of Paragraphs 1-85 and 173-354 of this Complaint, as if fully set forth herein.

354. This is a claim for declaratory relief brought under the provisions of 735 ILCS 5/2-701.

355. 735 ILCS 5/2-701 provides that a Court has the power to issue a

declaration of parties' rights if: 1) an actual and legal controversy exists; 2) the controversy is susceptible to an immediate and definitive determination or will aid in the termination of the controversy; and 3) the plaintiff has standing by virtue of a tangible and legal interest in the controversy.

356. Here, an actual and legal controversy exists as to the rights of the parties regarding the Client Assets deposited by Plaintiffs into their BlockFills account solely for custody and collateral purposes.

357. The Client Assets are not BlockFills' property and must be returned to Plaintiffs.

358. The instant controversy is susceptible to an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy of some part thereof.

359. By virtue of Plaintiffs' ownership of the Client Assets, they have a tangible and legal interest in said controversies.

WHEREFORE, Plaintiffs 1548199 ALBERTA LTD. and ROBERT J. BERTRAM hereby pray that this Honorable Court for a declaratory judgment declaring that: the Client Assets were delivered to BlockFills by Plaintiffs for the purposes of custody and collateral only; Plaintiffs have retained ownership over the Client Assets; such ownership was never transferred to BlockFills; and for such other relief as the Court deems fair and just.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

Dated: March 5, 2026

\s\ Thomas E. Patterson
Thomas E. Patterson
Alyssa I. Kiriakos
Patterson Law Firm, LLC
200 W. Monroe Street, Suite 2025
Chicago, IL 60606
P: 312-223-1699
F: 312-223-8549
Firm ID No. 45052
tpatterson@pattersonlawfirm.com
akiriakos@pattersonlawfirm.com
*Attorney for Plaintiffs*

## VERIFICATION

I verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the statements set forth in the foregoing Complaint are true and correct, except as to those matters stated to be based on information and belief, and to such matters the undersigned certifies that he verily believes the same to be true.

Date: March 5, 2026

Robert Bertram

Robert J. Bertram

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| 1548199 Alberta Ltd. and Robert J. Bertram,<br><br>Plaintiff,<br><br>v.<br><br>Reliz Technology Group Holdings Inc., Reliz Ltd., Reliz CI Ltd., Joseph Patrick Perry, Nicholas Hammer, and Gordon Wallace,<br><br>Defendants. | Case No. 26-CV-02451 |

**AFFIDAVIT PURSUANT TO 735 ILCS 5/2-606**

Pursuant to 735 ILCS 5/2-606, Plaintiff Robert J. Bertram, being first duly sworn on oath, deposes and states as follows:

1. I am one of the Plaintiffs in this cause.

2. On or about December 10, 2025, I submitted an application for a BlockFills legal entity account on behalf of 1548199 Alberta Ltd. (the "Application Agreement").

3. When I submitted the Application Agreement, I received an e-mail confirmation. Attached to the Complaint as **Exhibit 1**.

4. I do not have access to a copy of the executed Application Agreement. A blank version is attached to the Complaint as **Exhibit 2**.

Further, affiant sayeth naught.

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Date: March 5, 2026

Robert Bertram

Robert J. Bertram